IN THE UNITES STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

**MINING, ROCK EXCAVATION AND**      **PLAINTIFF/**
**CONSTRUCTION LLC**      **COUNTER-DEFENDANT**

v.      No. 3:16-cv-00297-DPM

**TERRAFIRM CONSTRUCTION, LLC**      **DEFENDANT/**
**(A MAHAN COMPANY)**      **COUNTER-PLAINTIFF**

BRIEF IN SUPPORT OF
MOTION TO SET ASIDE ORDER OF DELIVERY

    Defendant/Counter-Plaintiff TerraFirm Construction, LLC, by and through its counsel Scott P. Richardson, McDaniel, Richardson, & Calhoun, PLLC, states for its Motion to Set Aside Order of Delivery as follows:

    This is an action on a lease for a drill being used in the construction of a railroad bridge to replace the 124 year old West Memphis Bridge over the Mississippi River between West Memphis, Arkansas, and Memphis, Tennessee. Defendant/Counter-Plaintiff TerraFirm Construction, LLC, ("TerraFirm") negotiated a Lease Agreement with Atlas Copco Group[1] to rent a drill rig called a Hutte HBR 205 GT Crawler Drill ("Hutte 205GT"). Within days of delivery the Hutte 205GT malfunctioned and Atlas Copco elected to remove the drill from the project and failed to provide an "equal replacement machine" and failed to timely and properly repair the Hutte 205GT as required by the Lease Agreement. On

---

[1] Plaintiff/Cross-Defendant Mining, Rock Excavation and Construction, LLC is a company within the Atlas Copco Group and will hereinafter be reffered to as "Atlas Copco."

September 26, 2016, while the parties were negotiating over the cost of the breach, Atlas Copco filed a Complaint in the Circuit Court of Crittenden County alleging breach of contract and attempting to replevin the Hutte 205GT. The Complaint and a Notice of Petition for Order of Delivery were served by a process server on The Corporation Company, but not actually delivered to TerraFirm until October 18, 2016. Atlas Copco now seeks to have the Crittenden County Sheriff seize the Hutte 205GT. Such precipitous action will cause major damages to TerraFirm, to Kraemer North America LLC (the general contractor), the Burlington-Northern Santa Fe Railway (the owner of the bridge being constructed), and everyone who depends on this bridge for delivery of goods. Moreover, the bridge is being replaced due to safety concerns and any delay will increase the risk of a train incident with attendant life, safety, and environmental risk. Accordingly, TerraFirm requests an Order setting aside Atlas Copco's Order for Delivery, maintaining the status quo, and allowing the parties time to settle the issues in this litigation in an orderly fashion.

## **Factual Background**

Kraemer North America LLC ("Kraemer") contracted with TerraFirm to construct the foundation of the new West Memphis Bridge. To do that, TerraFirm must drill pilings in the riverbed, extract the cores, and then fill the pilings with concrete. TerraFirm entered a lease agreement with Atlas Copco to lease the Hutte 205GT to drill the pilings. The Hutte 205GT was uniquely suited for use on the project because of its performance characteristics. When in normal working order,

tt could drill the pillings at the rate necessary to maintain the job schedule for the project.  As the foundation work, all other work on the project depends on this machine to advance the project.

On March 15, 2016, the lease agreement was executed by the parties. On March 22, 2016, the Hutte 205GT was delivered to the job-site. Immediately, the Hutte 205GT suffered a number of critical mechanical failures. Eventually it broke down so badly that Atlas Copco removed it from the job site and delivered another drill rig, a Hutte 605.  The second, smaller drill rig could not drill with the strength and speed of the Hutte 205GT.  The Hutte 605 also suffered from mechanical failures and had to be modified so that it could drill the pilings. These failures caused significant delays requiring TerraFirm, among other things, to add a second shift to keep up with the scheduling demand.

The parties negotiated specific lease terms for the Hutte 205GT.  The lease agreement cancelled all of the normal terms and conditions of Atlas Copco's form lease agreement.  The agreement contained the following terms that are relvant to the current situation:

> 3.    The Buyer shall have sole discretion as to the duration of this agreement.
>
> 7.    Seller understands that the Hutte 205GT Crawler Drill listed in this Purchase Order will be used to install Micropiles at the West Memphis Site.
>
> 10.   If this equipment is subject to a break-down due to no fault of the Buyer or to reasons other than those caused by the Buyer, Seller shall repair the machine within three (3) days of Buyer notice of breakdown or adjust rent back to the date of the breakdown, or provide an equal replacement machine, at the Seller's cost including costs to mobilize the replacement machine.

It is beyond dispute that the Hutte 205 GT broke down and was unable to perform as required by the lease agreement. It is also beyond dispute that, when the Hutte 205GT had to be removed from the job site for three months for repairs, Atlas Copco could not "provide an equal replacement machine," i.e. another Hutte 205GT.

Accordingly, Atlas Copco breached the Lease Agreement by delivering non-conforming goods and failing to cover the loss as provided in the lease agreement. This breach caused damages to TerraFirm for which it is entitled to compensation. The parties have been in negotiations over the amount of damages caused by Atlas Copco's breach over the last several months.

On September 26, 2016, Atlas Copco filed a Complaint for breach of contract and replevin against TerraFirm. A process server delivered the Summons, Complaint, and a Notice of Petition for Order of Delivery to the Corporation Company on or about September 28, 2016. The Corporation Company sent these documents to TerraFirm via commercial delivery service (UPS). But, for some unknown reason UPS did not deliver the documents. Instead UPS returned the documents to the Corporation Company. Thus, TerraFirm did not have actual notice of the lawsuit and the Notice of Petition for Order of Delivery (the Notice) until on or about October 18, 2016.

During this entire time period the parties had been in contact over the lease agreement, the amounts owed under the lease agreement, and the damages that TerraFirm claimed from Atlas Copco's breach of the agreement. General cousel for both companies had been in direct discussions during this time period. Despite

4

these facts, no one from Atlas Copco alerted TerraFirm that a lawsuit had been filed or that Atlas Copco was seeking an Order from the Crittenden County Circuit Court to immediately sieze the Hutte 205GT.

### **TerraFirm is Not In Default**

The Summons served on TerraFirm states that TerraFirm had thirty days after service of the summons to respond to the Complaint or "judgment by default may be entered against you for the relief demanded in the complaint." The Summons and Complaint were served on or about September 28, 2016. Thus, TerraFirm has until October 28, 2016, to respond to the Complaint.

The summons contained no warning that part of "the relief demanded in the complaint," replevin of the Hutte 205GT, might be awarded if no response was filed within five days of service. The Notice of Petition for Order of Delivery did state that an Order for Delivery may be entered if a written response was not filed within five days of service. So, there is an odd conflict in the documents delivered to the Corporation Company regarding the actual deadline to respond. Regardless, TerraFirm is not in default.

### **Rule 55 Counsels that the Order of Delivery Be Set Aside**

Even so, it is anticipated that Atlas Copco will treat its Order for Delivery as, essentially, a default situation. Federal Rule of Civil Procedure 55 governs default and when a default may be set aside. "The court may set aside an entry of default for good cause, and it may set aside a final default judgment under Rule 60(b)." Fed. R. Civ. P. 55(d). In deciding whether to set aside a default, federal courts

examine "whether the conduct of the defaulting party was blameworthy or culpable, whether the defaulting party has a meritorious defense, and whether the other party would be prejudiced if the default were excused." *Johnson v. Dayton Electric Mfg. Co.*, 140 F.3d 781, 784 (8th Cir. 1998). In looking at the first factor, the courts ask whether the party alleged to be in default has engaged in "contumacious or intentional delay or disregard for deadlines and procedural rules" or whether there is a "marginal failure to meet pleading or other deadlines. *Id.* Defaults are regularly set aside when there is a marginal failure and there are meritorious defenses and an absence of prejudice. *Id.*

Here, there are no facts suggesting intentional delay. On the contrary, TerraFirm received notice of the action for the first time on October 18, 2016, and filed an Answer and Counter-Claim two days later. The reason for the delay between service and answer is two-fold. First, the Summons, Complaint, and Notice simply were not delivered to TerraFirm until October 20, 2016. The first indication that TerraFirm received that this action had been filed was October 18, 2016. The delivery failure was because the commercial delivery company did not leave the package at TerraFirm's headquarters, but, for some unknown reason returned them to Little Rock. As soon as TerraFirm learned of the action it took steps to address the Complaint.

Second, Atlas Copco never informed TerraFirm that this action had been filed or that it was seeking to replevin the Hutte 205GT before having the Order for Delivery issued. While the action was pending, employees from TerraFirm and

6

employees of Atlas Copco had been in direct contact negotiating over the lease agreement. Indeed, general counsels for both companies had been in direct contact, but Atlas Copco's general counsel never said anything about the pendency of this action or their efforts to replevin the drill rig. But, Atlas Copco was well aware of the damage that removal of the Hutte 205GT would cause to TerraFirm and the entire West Memphis Bridge project. There is certainly the appearance that Atlas Copco was hoping that it could catch TerraFirm unaware and surprise it with the Order of Delivery.

As explained in the Answer and Counter-Claim, TerraFirm has a meritorious defense to Atlas Copco's Complaint. In short, Atlas Copco breached the lease agreement by delivering a defective drill rig, failing to provide promised "equal" drill rig when the first one failed, all of which has caused substantial damages to TerraFirm.

Finally, Atlas Copco will suffer no prejudice if the Order of Delivery is set aside. Indeed, setting aside the Order will avoid significant damages that would result from the loss of the Hutte 205GT. The issue revolve around money owed under the rental agreement and for breach of the rental agreement. These can be resolved without the precipitous action proposed by Atlas Copco.

### Under Arkansas Law The Order For Delivery Should be Set Aside

Atlas Copco is proceeding in part under Arkansas law regarding recovery of personal property and replevin. Ark. Code Ann. § 18-60-801 et seq. This law allows a person who "claims a right of possession of property in the possession of another"

to apply for issuance of an order of delivery of the property. Ark. Code Ann. § 18-60-804(a). A lease is a "transfer of the right to possession" of the subject property. Ark. Code Ann. § 4-2A-103(j). Similarly, a lessee is a person "who acquires the right to possession and use of goods under a lease." Ark. Code Ann. § 4-2A-103(n).

The Lease Agreement in this case thus transferred the right of possession of the Hutte 205GT from Atlas Copco to TerraFirm for the duration of the lease. Atlas Copco's standard lease terms and conditions reserve a right to repossess the leased goods in the event of a default. But, in this lease, those terms were deleted. Instead, the parties agreed that TerraFirm "shall have sole discretion as to the duration of this agreement." Ex. 1, para. 3. That is, TerraFirm maintains its right of possession for the duration of the lease. Accordingly, Atlas Copco dose not have a claim to a "right of possession" because the term of the lease has not ended. Thus, the Order for Delivery should be set aside.

Arkansas law also allows a person subject to an order of delivery to post a bond in double the value of the leased goods and, thereby, retain possession of the goods. Ark. Code Ann. § 18-60-816. TerraFirm stands ready to secure this bond to maintain possession for the remainder of the lease term. Accordingly, the Order of Delivery should be set aside because TerraFirm will be entitled to immediate return of the goods under Arkansas law.

WHEREFORE, Defendant/Counter-Plaintiff TerraFirm Construction, LLC respectfully requests that the Order of Delivery be set aside, that it be granted its

8

rights under the lease agreement to maintain possession of the Hutte 205GT, and that it be awarded all other relief to which it is entitled.

Respectfully Submitted,

/s/ Scott P. Richardson\_
Scott P. Richardson, Bar # 2001208
McDaniel, Richardson, & Calhoun PLLC
1020 West 4th St., Suite 410
Little Rock, AR 72201
501.235.8336
501.588.2104 fax
scott@mrcfirm.com

Attorney for Defendant TerraFirm Construction, LLC

**CERTIFICATE OF SERVICE**

I hereby certify that on October 20, 2016, a copy of the foregoing was filed with the Court's electronic filing system which will serve a copy on the following:

David L. Jones
Wright, Lindsey, & Jennings LLP
200 West Capitol Ave., Suite 2300
Little Rock, AR 72201-3699

/s/ Scott P. Richardson\_
Scott P. Richardson

9