IN THE UNITES STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

| | |
|---|---|
| **MINING, ROCK EXCAVATION AND CONSTRUCTION LLC** | **PLAINTIFF/ COUNTER-DEFENDANT** |
| v. No. _____ | |
| **TERRAFIRM CONSTRUCTION, LLC (A MAHAN COMPANY)** | **DEFENDANT/ COUNTER-PLAINTIFF** |

## BRIEF IN SUPPORT OF DEFENDANT/COUNTER-PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Now comes the Defendant, TerraFirm Construction LLC, by and through counsel and for its Brief in Support states as follows:

### INTRODUCTION

This is an action on a lease for a drill being used in the construction of a railroad bridge to replace a 124 year old bridge over the Mississippi River between West Memphis, Arkansas, and Memphis, Tennessee. Defendant/Counter-Plaintiff TerraFirm Construction, LLC, ("TerraFirm") negotiated a Lease Agreement with Atlas Copco Group[1] to rent a drill rig called a Hutte HBR 205 GT Crawler Drill ("Hutte 205GT"). Within days of delivery the Hutte 205GT malfunctioned and Atlas Copco elected to remove the drill from the project failed to provide an "equal replacement machine" and failed to timely and properly repair the Hutte 205GT as required by the Lease Agreement.

---

[1] Plaintiff/Cross-Defendant Mining, Rock Excavation and Construction, LLC is a company within the Atlas Copco Group and will hereinafter be reffered to as "Atlas Copco."

The second drill rig could not drill with the strength and speed of the Hutte 205GT, which caused significant delays requiring TerraFirm to add a second shift to keep up with the scheduling demand. Accordingly, Atlas Copco breached the Lease Agreement by delivering non-conforming goods and failing to cover the loss as provided in the lease agreement. The parties have been in negotiations over the amount of damages caused by Atlas Copco's breach over the last several months.

On September 26, 2016, while the parties were negotiating over the cost of the breach, Atlas Copco filed a Complaint in the Circuit Court of Crittenden County alleging breach of contract and attempting to replevin the Hutte 205GT. The Complaint and a Notice of Petition for Order of Delivery were served by a process server on The Corporation Company, but not actually delivered to TerraFirm until October 18, 2016. Atlas Copco now seeks to have the Crittenden County Sheriff seize the Hutte 205GT. TerraFirm filed its Answer and Counterclaim to the Complaint on October 20, 2016. *See* Docket Entry # 3. Atlas Copco's actions, specifically replevin, will cause major damages to TerraFirm, the general contractor, the Burlington-Northern Santa Fe Railway, the public, and everyone who depends on this bridge for delivery of goods. Moreover, the bridge is being replaced due to safety concerns and any delay will increase the risk of a train incident with attendant life, safety and environmental risk. Accordingly, TerraFirm requests a Temporary Restraining Order preventing Atlas Copco from seizing the Hutte 205GT.

**FACTUAL BACKGROUND**

Kraemer North America LLC ("Kraemer") contracted with TerraFirm to construct the foundation of the new West Memphis Bridge. To do that, TerraFirm must drill pilings in the riverbed, extract the cores, and then fill the pilings with concrete. TerraFirm entered a lease agreement with Atlas Copco to lease the Hutte 205GT to drill the pilings. The Hutte 205GT was uniquely suited for use on the project because of its performance characteristics. When in normal working order, it could drill the pilings at the rate necessary to maintain the job schedule for the project. As the foundation work, all other work on the project depends on this machine to advance the project. This construction job is subject to significant timing and deadline requirements.

As part of the negotiations on the lease, TerraFirm informed Atlas Copco of the specific needs for the drill rig to be used, the particular purposes for which it was to be used, and the consequences of failure of the drill rig. Prior to TerraFirm agreeing to rent the Hutte 205GT, Atlas Copco represented to TerraFirm that the Hutte 205 GT would meet TerraFirm's needs, be subject to a thorough inspection, and be delivered in full and complete working order.

The parties entered into the lease agreement on March 15, 2016. Attached as Exhibit A is a true and accurate copy of the Lease Agreement. The parties negotiated a lease agreement specific to the Project. In particular the Agreement provided:

> 3. The Buyer shall have sole discretion as to the duration of this agreement.

7. Seller understands that the Hutte 205GT Crawler Drill listed in this Purchase Order will be used to install Micropiles at the West Memphis Site.

10. If this equipment is subject to a break-down due to no fault of the Buyer or to reasons other than those caused by the Buyer, Seller shall repair the machine within three (3) days of Buyer notice of breakdown or adjust rent back to the date of the breakdown, or provide an equal replacement machine, at the Seller's cost including costs to mobilize the replacement machine.

The Lease Agreement specifically deleted Atlas Copco's normal rental terms and conditions. These were deleted and replaced with special terms and conditions specifically negotiated between the parties. Among the terms deleted from the contract were those dealing with default under the lease and Atlas Copco's right to repossess the drill rig. Instead, the parties agreed that TerraFirm had "sole discretion as to the term of the agreement." The parties further agreed that the normal terms allowing Atlas Copco a security interest in the Hutte 205GT and a right to repossess it in the case of default would not apply and Atlas Copco would have no such rights.

On March 22, 2016, Atlas Copco delivered the Hutte 205GT to the job site. Immediately, the Hutte 205GT demonstrated a number of critical mechanical failures. Specifically, in early April 2016 the engine in the Hutte 205GT failed. Atlas Copco made the decision to remove the Hutte 205GT from the site and send it out for repair. This decision triggered Atlas Copco's duty to "provide an equal replacement machine" to continue the work at the project. However, Atlas Copco did not deliver an "equal replacement machine," although the parties understood that this term meant another Hutte 205GT.

4

Eventually, the Hutte 205GT broke down so badly that Atlas Copco removed it from the job site and delivered another drill rig, a Hutte 605. The second, smaller drill rig could not drill with the strength and speed of the Hutte 205GT. The Hutte 605 also suffered from mechanical failures and had to be modified so that it could drill the pilings. These failures caused significant delays requiring TerraFirm, among other things, to add a second shift to keep up with the scheduling demand.

It is beyond dispute that the Hutte 205 GT broke down and was unable to perform as required by the lease agreement. It is also beyond dispute that, when the Hutte 205GT had to be removed from the job site for three months for repairs, Atlas Copco could not "provide an equal replacement machine," i.e. another Hutte 205GT. TerraFirm has been forced to use a damaged Hutte 205GT, as the damaged 205GT is still more capable of completing the project than the Hutte 605.

**ARGUMENT**

TerraFirm is entitled to a temporary restraining order and preliminary injunction preventing Atlas Copco from repossessing the Hutte 205GT. TerraFirm is likely to prevail on the merits and certain to suffer irreparable injury if this motion is not granted. This Court must act now to prevent irreparable injury to TerraFirm, the general contractor, the Burlington-Northern Santa Fe Railway, and everyone who depends on this bridge for delivery of goods. Moreover there is great risk associated with a substantial delay to this project. The bridge is being replaced because it is 124 years old and poses a life safety risk. Should a derailment occur lives will be lost, workers will be injured and in the event that the freaght beign hauled includes tank

5

cars a significant spill into the Mississippi River could result. The prospect of harm to Atlas Copco is minimal if the motion is granted, and the public interest strongly favors TerraFirm's motion.

I. **Legal Standards**

TerraFirm seeks a temporary restraining order and a preliminary injunction. The basic test in determining whether injunctive relief is appropriate is "whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined." *Dataphase Systems, Inc. v. C L Systems, Inc.*, 640 F.2d 109, 113 (8th Cir. 1981). The Court will consider the following factors in applying this test: "(1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." *Id.*

In balancing these separate factors and the equities of each individual case, no single factor is determinative, including likelihood of success on the merits. *Id.* As stated by the Eighth Circuit:

> The likelihood that plaintiff ultimately will prevail is meaningless in isolation. In every case, it must be examined in the context of the relative injuries to the parties and the public. If the chance of irreparable injury to the movant should relief be denied is outweighed by the likely injury to other parties litigant should the injunction be granted, the moving party faces a heavy burden of demonstrating that he is likely to prevail on the merits. Conversely, where the movant has raised a substantial question and the equities are otherwise strongly in his favor, the showing of success on the merits can be less.

*Id.*

This Court has broad discretion when ruling on a request for preliminary injunctive relief. *Novus Franchising, Inc. v. Dawson*, 725 F.3d 885, 893 (8th Cir. 2013).

## II. TerraFirm is Entitled to a Temporary Restraining Order and a Preliminary Injunction Preventing Atlas Copco from Seizing the Hutte 205GT.

### A. *TerraFirm is Likely to Prevail on the Merits.*

TerraFirm's primary claim is straightforward: Atlas Copco breached the lease agreement by delivering a defective Hutte 205GT and failing to replace the disabled Hutte 205GT with an "equal replacement machine." This is expressly called for in the lease agreement. As stated above, Atlas Copco replaced the Hutte 205GT with a machine not capable of performing at the same level as the Hutte 205GT. In fact, the new machine, the 605, was wholly inadequate. At this moment, the damaged Hutte 205GT in TerraFirm's possession is more capable of performing the work than the undamaged 605. Even though it requires additional hours of work, it is capable of finishing the construction project, albeit in a longer period of time.

TerraFirm should be able to retain the Hutte 205GT, pursuant to the agreement, until Atlas Copco performs its end of the bargain by supplying TerraFirm an "equal replacement machine." Atlas Copco alleges that TerraFirm has breached the agreement for non-payment, but it is readily apparent that TerraFirm has no obligation to pay Atlas Copco for the drill if Atlas Copco does not fulfill its obligations. In short, Atlas Copco has failed to adhere to the terms of the lease agreement.

7

> B. **TerraFirm, its General Contractor, the Burlington-Northern Santa Fe Railway, and the Public Will Face Irreparable Damage Absent Injunction. However, Injunctive Relief will Cause Minimum to No Harm to Atlas Copco.**

If TerraFirm is not able to retain the Hutte 205GT, multiple entities, individuals, and the public will face irreparable harm. The Hutte 205GT is being used in the construction of a railroad bridge to replace a 124 year old bridge over the Mississippi River between West Memphis, Arkansas, and Memphis, Tennessee. Specifically, the drill is being used to help set the foundation for the new bridge. Of course, the bridge's construction starts with the foundation and further construction depends on the timely completion of the foundation. If the foundation is not done in a timely manner, it will not only jeopardize TerraFirm's obligations to the general contractor and its business in general, but it will also delay goods from being transported, and the construction will continue to cause traffic congestion. Moreover, removal of the Hutte 205GT will affect the construction workers who may be laid off if construction comes to a halt because of Atlas Copco's removal of the Hutte 205GT. The interests of the public will be served by the granting of a temporary restraining order as this will avoid not simply the risk of a delay in the delivery of freight, but it will avoid the life, safety and environmental risks addressed above. This harm is not reparable by money damages, and this Court should enter injunctive relief accordingly and prevent such harm.

On the other hand, if this Court enters injunctive relief, it only has the potential, not the certainty, to cost Atlas Copco money. Both parties have breach of contract claims against the other and each will be litigating for money damages as a

result of the alleged breaches. TerraFirm only anticipates needing the Hutte 205GT for another five to six weeks. If, for instance, Atlas Copco is successful in its claim for breach of contract, the five to six week period can be taken into account when calculating money damages. Thus, when examining "the state of the balance between [movant's irreparable harm] and the injury that granting the injunction will inflict on other parties litigant," it is apparent that TerraFirm is entitled to injunctive relief. The magnitude and probability of harm to TerraFirm in the absence of injunctive relief far outweighs the potential harm to Atlas Copco if injunctive relief is afforded.

C.   *Public Interest Supports this Court Granting TerraFirm's Motion.*

It cannot be overstated that a project of this purpose and magnitude significantly affects the public at large and especially residents of the Memphis, Tennessee metropolitan area. The public interest in prompt and efficient construction of railroad bridges is obvious, as any delay of such will disrupt commerce and burden residents, travelers, and the workers who rely on this job for their livelihood.

**CONCLUSION**

For the reasons set forth above, TerraFirm respectfully requests that the Court issue a temporary restraining order and preliminary injunction preventing Atlas Copco from repossessing the Hutte 205GT.

Respectfully submitted,


By: /s/ Scott P. Richardson
    Scott P. Richardson #2001208
    **McDaniel, Richardson, & Calhoun PLLC**
    1020 West 4th St., Suite 410
    Little Rock, AR 72201
    o 501-235-8336
    fax 501-588-2104
    scott@mrcfirm.com

    Attorney for Defendant/Counter-Plaintiff


## **CERTIFICATE OF SERVICE**

I hereby certify that on October 20, 2016, a copy of the foregoing was filed with the Court's electronic filing system which will serve a copy on the following:

David L. Jones
Wright, Lindsey, & Jennings LLP
200 West Capitol Ave., Suite 2300
Little Rock, AR 72201-3699

    /s/ Scott P. Richardson
    Scott P. Richardson